Mr. Barber are you with us? I am. Ms. Curtis? I'm here, thank you. Case number 19-3337 Amber Kraus v. Andrew Saul, Commissioner of Social Security Administration. Mr. Barber. Thank you, members of the Corps. My name is Terry Barber and I am the appellate in this case and in 2014 she filed an application for disability insurance benefits and SSI. There were a couple of turndowns of her application administratively. She requested a hearing which took place before Administrative Law Judge Lainers in 2017. Judge Lainers determined that she was not eligible and that's what brought us to the District Court where the magistrate agreed with Judge Lainers which in turn brought us to this court. The evidence that was before Judge Lainers consisted of the testimony of the applicant. Amber testified about the respiratory issues that she had and other challenges. She testified about the course of medications that she had been taking, about her work history, and identified her primary providers who were Dr. Kinberg and Dr. Duffy. Dr. Kinberg was the physician that was treating her for allergies and asthma. Dr. Duffy was working with her with respect to her mental health. Based on the testimony of Ms. Krause at that hearing, there were a number of questions put to the vocational rehabilitation counselor, the expert that was there by the name of Holly Neal. And as the facts of her situation were proposed to the expert, the end result was given all of the conditions that she suffered from and the requirements of those that there wasn't available work. Nonetheless, and this really gets to the core issue, the administrative law judge and subsequently the magistrate judge determined that the opinions of Dr. Kinberg and the opinions of Dr. Duffy were not entitled to the ordinary deference that is accorded to the actually treating health care providers in cases of this sort. Instead, what was given weight were the opinions of physicians who had simply done records reviews. Well, did the one doctor just check a box, counsel? Dr. Duffy? Duffy, yeah. He did, yes. That's correct. And it was in the ordinary course of the treatment and the documentation that that was done. It was not a staged and formal opinion, but it was clear in its import. Well, that's perhaps, but what about our line of cases that say mere conclusory opinions without sufficient explanation or evidence in the record to sustain that conclusion can be given little weight or even disregarded by the ALJ? Well, with respect to that proposition, I think we have to keep in mind that there were extensive records from both Dr. Duffy and Dr. Kinberg in the record and a course of treatment demonstrated in the record that provided the basis in each instance for their respective opinions with respect to Amber's ability to work. Don't Dr. Duffy's notes show substantial and continued improvement in memory concentration mood and physical health if you just read them? That's true, but we believe that the records of Dr. Duffy also demonstrate the course of medications that Amber required to maintain that and that the record also demonstrates because she testified about it, number one, and she provided the current prescriptions to the administrative law judge that that course of treatment was and the medications were responsible for the improvement and sustaining her. I don't think that that detracts from the fact that even given the fact that she was stabilized by the medications in Dr. Duffy's opinion, she was not in a position to be working and I think similarly, the same reasoning applies to Dr. Kinberg's opinion. Well, since it's your time short, let me focus you on what you need to explain to me. His notes say she had fairly good control of I don't mean to denigrate it, so please tell me how that doesn't apply. Well, I think one of the things that we need to think about in this case is simply because something is under control with the course of treatment with medications doesn't necessarily put somebody out of the woods in terms of their ability to function. One of the things that Amber testified about was how frequently she needed to turn to the nebulizer treatments and the medications in order to get through particular episodes. Before we go on to that, I think that goes to basically the vocational expert opinions. I'm really still looking at Dr. Kinberg. He never does actually explain how her medical conditions are impacting her ability to work and why she can't work. I mean, so all we're left with is his description of symptoms and his descriptions that she's doing better, making progress. And his description that in his opinion, as a matter of fact, she's impeded from being able to work. Yes, but no basis is given for that opinion. I mean, he doesn't say how his medical conditions, how her medical conditions are impacting her ability to work. There's no nexus there. Judge, I think the nexus is that the prescriptions are current. It is part of her regimen, her daily regimen, and that's demonstrated in the record. And you do have to connect dots. We aren't dealing here with opinions given either by Dr. Kinberg or Dr. Duffy that are specifically a recognized structure of opinion in the way that the opinions of the record reviewers were. These are records and opinions in the course of treatment, nothing about them that's staged or that indicates any scandal. You're in your rebuttal, so you know. Okay, very good. And nothing that indicates any of the triggers, I guess I would say, of several of the cases that were cited in response by the appellee. I'll reserve the rest. You certainly may. Ms. Curtis. Good morning, your honors. May it please the court. My name is Kizuwanda Curtis, and I represent Andrew Saul, the commissioner of social security. Ms. Krauss has the burden of proving her residual functional capacity or RFC. However, her skeletal arguments do not meet her burden of showing that additional limitations were required in the ALJ's RFC finding. To add any substance to plaintiff's bare bones arguments would require this court to weigh the evidence, which it cannot do. Maybe that's not quite accurate, though, because the vocational expert did, in fact, find that if there were a need to have a 25-minute break one to three times a week, that there would not be jobs in the economy in significant numbers because it would be an accommodating job. An ALJ never really explains why they put hypothetical two to the vocational expert and why they just completely ignored it. The ALJ doesn't make a credibility determination saying, I find that incredible. It doesn't make a credibility determination that says, I think that that one to three that he interposed is a pretend thing that he just made up. So there's no real explanation for it. That is the piece that's just kind of, I mean, you look at substantial evidence in the record of failure to connect the dots and all that stuff. I mean, I can see where you're coming from all the way up to the point where, well, what about this hypothetical that the ALJ obviously thought was supported by the facts in the record and then he got an answer he didn't like and doesn't bother to explain why it doesn't stand? Your Honor, you're correct. The ALJ did pose that hypothetical to the vocational expert and he did so in consideration of Ms. Krause's subjective allegations. However, when he compared her allegations to the record evidence, he was not able to accept the vocational expert with respect to the limitations that were posed in that hypothetical. And thus, it did not play a role in his ultimate RFC finding, which he based on the record as a whole. I'd feel a lot better if he actually said that. Yes. With respect to the evidence that he did... Well, let me follow up. Let me follow up and I reached over to get the files. What's the closest the ALJ comes to doing it or not doing it? Well, the ALJ, to start, he's not bound by hypotheticals that ultimately he determines to not reflect or accurately reflect the limitations that are supported by the record. But what's the closest? I've got it here in front of me, 13 pages. And tell me the closest he comes... It is a he, yeah, Ron. Tell me the closest that he comes to saying, we can't go with the... I think it's the second hypothetical. Well, at step five, well, the ultimate hypothetical that he accepted was reflected, mirrored his RFC finding to start. And so that shows you that that second hypothetical, he did not find supported by the evidence. And he discussed in his RFC analysis, the evidence that supported the RFC, which mirrored the hypothetical that he presented to the VE and ultimately relied on to determine that there were jobs in significant numbers that 12. Well, it's there, it's the, at step five of his decision, he did discuss that with respect to the hypotheticals that he posed, it was determined that she could perform certain other jobs that fit his first hypothetical. And then also the RFC... In the numbers here? I'm sorry? Here's the thing. It seems to me like you've got a penumbra argument that because he explains the first hypothetical and says little about the second hypothetical that we should find in the penumbras that he rejected the factual underpinnings of that second hypothetical. Right. And the factual underpinnings that gave him reason to reject that second hypothetical were in his RFC analysis, where he discussed that contemporaneous medical records, despite her maybe being prescribed albuterol treatments for up to every four hours, there was no indication in the evidence that she actually required treatment this often. For example, in 2014... Well, he kind of rejected that in his hypothetical, and then he said one to three times a week, which that's a little closer to what's in the record. Yes, that's a little closer to what Ms. Krause actually alleged. Because she alleged, I believe the record shows she alleged having to use her treatments up to two times a day, is what I saw. And that was at a December 2014 consultative evaluation where she said, and you will note that she said her attacks were getting worse, yet she was only using her treatments twice a day with them getting worse, which argues against any assertion that this hypothetical, even the one that the ALJ posed, along with her subjective allegations, were actually supported by the record. And there was also other evidence showing that Dr. Kimberg in a single puff of Advair twice a day and one puff of Spiriva daily. And otherwise, you know, she just used her medications on an as-needed basis. And as the judges pointed out, she had conservative treatment and normal findings in diagnostic tests over the course of her treatment, which also argues against accepting the first hypothetical, or I'm sorry, the second hypothetical that the ALJ posed. And so the ALJ wasn't bound by the limitations reflected in that second hypothetical. And in going back to the opinions of Drs. Kimberg and Duffy, as Judge Benson pointed out, Dr. Duffy's statements consisted of checkbox insurance forms. And Dr. Kimberg, he also had an opinion where he did, essentially listed her symptoms and medications and then said she can't work on a regular basis. But as Judge Erickson pointed out, this, as far as whether or not a plaintiff can work, that's a legal conclusion and it's not due any significant deference when an ALJ considers such a statement. But to the extent that the ALJ did not offer an opinion, they did not explain the reasons for their opinion that she couldn't work. And their own records argue against their statements that she couldn't work. As already stated, she had normal examinations over the course of her treatment. For instance, in April 2014, she had spirometry testing that was normal. And she also had an examination in September 2014 where she was able to, where she showed that she had essentially normal lung function. And overall, her course of treatment shows that she improved with conservative treatments with her only having follow-up appointments on a six-month schedule. And in addition to that, the ALJ considered her activities of daily living, which included doing chores, she played games on Facebook, watched a variety of television shows throughout the day, she went to church, she spent time with her friends, in addition to doing other things. And you will also note that Ms. Krause's alleged onset date of January 2014 corresponds to the date she was let go from her job, not, it isn't tied to any complications from any And so all of this evidence goes against her claim. Does the record show why she was let go? She was let go because her hours were cut back. They didn't need her for the number of hours, so she was let go. And that's on page 538 of the record. And with regard to Dr. Duffy's statements, again, there was not significant findings to show that she had a mental condition that warranted his conclusion that she could not work. Over the course, she had normal examinations over the course. And so in cases such as this, the ALJ rightfully considered the opinions of the state agency experts in concluding that Ms. Krause was able to form work. You will note that the ALJ even reduced the limitations that, because the state agency medical consultants restricted her to work at all exerted limitations, but he reduced her to light work and accounted for her asthma. Krause's arguments boil down to her wanting the court to accept her subjective allegations without regard to the evidence to the contrary. And this is a substantial effort. Your time has expired. Thank you, Your Honors. Thank you for the argument. Mr. Barber, for both. Just one point, Judge. The argument that I didn't get to in the first part of the argument is exactly the one that Judge Erickson brought up with respect to the matter of the administrative law judge and then not addressing, in fact, the matter of the hypothetical that had been posed to the expert, the expert's testimony with respect to that. I think that counsel has referred to Ms. Krause's allegations. In fact, they were not mere allegations. It was testimony that she gave before the administrative law judge that precipitated his question to the vocational expert, and it was not dealt with, certainly not adequately, and by my reading of the opinion, it was not dealt with at all. So for the reasons we've discussed, we're asking that the decisions be reversed and that Ms. Krause be allowed her benefits. Okay. Thank you both for your arguments. Case number 19-3337 is submitted for decision by this court.